STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           Docket No. RE-16-04



MATTHEW WALTERS AND          )
JENNIFER WALTERS, AS         )
TRUSTEES OF THE JENNIFER L.  )
WALTERS REVOCABLE TRUST,     )    **DECISION AND ORDER ON**
                             )    **DEFENDANT'S MOTION FOR**
                             )    **SUMMARY JUDGMENT**
        Plaintiffs,          )
                             )
        v.                   )
                             )
BRENDA R. LAVERDIERE,        )
                             )
        Defendant.           )

## INTRODUCTION

Before the court is the Defendant's Motion for Summary Judgment on all counts of the Second Amended Complaint.

The Plaintiffs are Matthew and Jennifer Walters, as Trustees of the Jennifer L. Walters Revocable Trust, hereinafter referred to as the Walters or the Trust. The Trust owns the real property located at 29 Sunset Drive in Manchester, which is where the Walters reside. The property was acquired by the Trust in 2013.

The Defendant is Brenda Laverdiere, who owns the real property located at 39 Silver Beach Road in Manchester. Ms. Laverdiere's property abuts the property owned by the Trust. Ms. Laverdiere, and her then husband, acquired the property in 1998.

This case involves allegations by the Walters that Ms. Laverdiere's construction of a boathouse on her property in 2015-2016, and landscaping

1

work done in 2016, resulted in serious soil erosion and water runoff onto the Trust property. The Trust commenced this action against Laverdiere in February 2016. The Second Amended Complaint, which is the operative complaint in this case, alleges: common law nuisance relating to the 2015 boathouse construction (Count I); statutory nuisance pursuant to 17 M.R.S. § 2808 relating to the 2015 boathouse construction (Count II); statutory nuisance pursuant to 17 M.R.S. § 2801 alleging the erection of a "spite fence" in 2016 (Count III); common law nuisance relating to the landscaping work done in 2016 (Count IV); statutory nuisance pursuant to 17 M.R.S. § 2808 relating to the 2016 landscaping work (Count V), and; injunctive relief (Count VI).

In an Order dated October 20, 2018, the court denied Laverdiere's initial motion for summary judgment on the basis that the Walters had failed to designate an expert witness on the issue of whether any boathouse construction work on the Laverdiere property caused any flooding to occur on the Walters's property. Moreover, the court granted the Walters's motion to file the Second Amended Complaint to allege that the 2016 landscaping work constituted a common law nuisance (Count IV) or a statutory nuisance under 17 M.R.S. § 2808 (Count V).

Laverdiere has now moved for summary judgment on all counts of the Second Amended Complaint. The factual background described below is taken from the summary judgment record.[1]

---

[1] The court is constrained to observe that the Plaintiffs' Response to the Defendant's Statement of Material Facts does not appear to be the "separate, short, and concise" statement contemplated by the rule. M.R.Civ.P. 56(h)(1) & (2). The court has disregarded those portions of the Response that it finds unnecessarily argumentative.

2

## FACTUAL BACKGROUND

In 2012-2013, the Walters built the home that now occupies the property at 29 Sunset Drive. As part of that construction project, the Walters retained the services of an engineer to design and oversee the installation of a surface water and drainage system on the property. The Walters completed their construction project in 2013.

In 2015 and into 2016, Ms. Laverdiere began construction of a "32 X 36 Boathouse with 15 X 17 Porch Water Treatment Room" (the "Boathouse"). Roughly two years earlier, in December 2013, Laverdiere had received a permit from the Town of Manchester for the construction of the Boathouse. It is alleged that during and after this construction on the Laverdiere property, the Walters began to experience significant soil erosion and surface water runoff onto their property.

The parties have major factual disputes as to the amount of water runoff that occurred prior to and after the Laverdiere Boathouse construction project. For example, Ms. Laverdiere has asserted that she observed water runoff and standing water problems on the Walters's property on numerous occasions between 1998 and 2015, prior to the construction of the Boathouse. Moreover, Laverdiere has implied that some of the water runoff problems experienced by the Walters only occurred after the Walters completed their construction project in 2013. For their part, the Walters assert that surface water runoff had never been a persistent problem on their property prior to the construction of the Boathouse.

In October 2015, while the Boathouse construction project was in progress, the Walters sent a letter to the Laverdieres complaining about the water runoff and asking that it be remedied. The Walters and the Laverdieres were not able to resolve their dispute at that time, and the Trust initiated this

lawsuit in February 2016. While the complaint was pending, the Walters alleged that Laverdiere performed additional landscaping work on her property that included the removal of trees and the addition of fill that altered the slope of the land, thereby causing new flooding of a different area of the Trust property. Furthermore, the Walters alleged that in May 2016, Laverdiere erected a 165-foot wooden fence along her property line with the Walters and that the fence was a "spite fence" because of its height and placement near the property line.[2]

## LEGAL STANDARD

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, 770 A.2d 653. It follows that to survive a moving party's motion for summary judgment, the non-moving party must establish a prima facie case for each of their claims and set forth specific facts showing there is a genuine issue of material fact. *Key Trust Co. of Maine v. Nasson College,* 1997 ME 145, ¶ 10, 697 A.2d 408; *see also* M.R. Civ. P. 56(e). As the Law Court has recently stated: when a defendant moves for summary judgment, the defendant has the burden of demonstrating "that there is no genuine issue of material fact and that the undisputed facts" entitle the defendant to judgment as a matter of law. *Toto v. Knowles,* 2021 ME 51, ¶ 9. It then becomes the plaintiff's responsibility to make out a prima facie case and show that there are disputed facts. *Id.* A fact is material if it has the potential to affect the outcome of the suit. *Id.* To be

---

[2] The court is not entirely clear when the fence was erected. The Second Amended Complaint alleges May 2016. The deposition testimony of Ms. Laverdiere refers to a fence being installed as part of the "2013 renovation project."

4

considered "genuine," there must be sufficient evidence offered to raise a factual contest requiring a fact finder to choose between competing versions of the truth. *Rainey v. Langden,* 2010 ME 56, ¶ 23, 998 A.2d 342; *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573. Further, this showing "requires more than effusive rhetoric and optimistic surmise." *Hennessy v. City of Melrose,* 194 F.3d 237, 251 (1st Cir. 1999). The Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Carroll v. Xerox Corp.,* 294 F.3d 231, 237 (1st Cir. 2002).

## DISCUSSION

Laverdiere seeks summary judgment on Counts I and IV of the Second Amended Complaint, which purport to assert claims for common law nuisance/trespass, on the ground that such a cause of action pertaining to "surface water flow" no longer exists. Laverdiere contends that the common law with respect to "surface water flow," has been abrogated by and replaced with the statutory nuisance cause of action created by 17 M.R.S. § 2808, which forms the basis for Counts II and V in this action. As to those counts, and the statutory nuisance claim regarding the fence (Count III), Laverdiere maintains that she is entitled to summary judgment because, as a matter of law, the Walters have failed to make out a prima facie case.

A. Common Law Nuisance for Surface Water Flow

It has been said that there is "no clear English common law on the subject" of the right of a landowner to drain surface waters on the landowner's property. *See Weldin Farms, Inc. v. Glassman,* 414 A.2d 500, 502 (Del. 1978). In the United States it appears that the courts have recognized three theories or doctrines about surface water flow. The first such doctrine is known as the "common enemy" rule, which "declares that surface water

5

which does not flow in defined channels is a common enemy and that each landowner may deal with it in such manner as best suits his own convenience." *Argyelan v. Haviland*, 435 N.E.2d 973, 975 (Ind. 1982).

The second doctrine, said to be "diametrically opposed" to the common enemy rule, is the "civil law," also referred to as the "natural flow" rule, which proscribes interfering with or altering the natural flow of surface water. *Id. See also Weldin Farms*, 341 A.2d at 502; *Butler v. Bruno*, 341 A.2d 735, 738 (R.I. 1975).

The benefit of these two doctrines is their predictability. The downside is their lack of flexibility. *Argyelan*, 435 N.E.2d at 975.

A third doctrine has evolved, said to be better suited to the realities of modern land use and development, and referred to as the "reasonable use" rule. *Weldin Farms*, 414 A.2d at 506. This doctrine appears to have been first articulated in New Hampshire. As stated in *Micucci v. White Mountain Trust Co.*, 321 A.2d 573, 575 (N.H. 1974), cited by many courts as the leading case on the subject, "[t]he law in New Hampshire has been long established that a property owner may use, manage and control the diffused surface waters on his land in any manner so long as it is reasonable in view of his own interest and that of all other persons thereby affected." A form of the "reasonable use" rule is described in the **Restatement (Second) of Torts, § 833.**

The "reasonable use" doctrine looks at a number of factors, including the extent of the owner's alteration of the flow of surface water, the nature and importance of his use of the land, the foreseeability of the harm to others, and the amount of the resulting injury. *Micucci*, 321 A.2d at 575. *See also Butler v. Bruno*, 341 A.2d T 740; *Enderson v. Kelehan*, 32 N.W.2d 286 (Minn. 1948). The reasonable use doctrine is flexible enough to deal with each case on a fact-specific basis, but it lacks the "absolute" predictability of the

"common enemy" doctrine and the "civil law" rule. *Weldin Farms*, 414 A.2d at 502. The "reasonable use" rule has been described as representing a shift from a property law analysis to a tort law analysis. **Restatement (Second) of Torts, § 833, Reporter's Notes.**

In Maine, the Law Court has recognized and applied the "modified common enemy" doctrine, which states that, while a landowner "may control the flow of mere surface water over his own premises . . . without obligation to any proprietor either above or below," the landowner "may nevertheless be liable for creating an artificial collection of water and discharging it onto land." *Harris v. Woodlands Club*, 2012 ME 117, ¶¶ 18-19, 55 A.3d 449 *citing and quoting Johnson v. Whitten*, 384 A.2d 698, 700 (Me. 1978).

In 2006, however, the Legislature enacted 17 M.R.S. § 2808, which provides:

> Unreasonable use of land that results in altered flow of surface water that unreasonably injures another's land or that unreasonably interferes with the reasonable use of another's land is a nuisance.

This legislation originated as L.D. 816 in the First Regular Session of the 122nd Maine Legislature as "An Act to Prohibit Changing the Flow of Water on Another's Land." The actual language of the bill, however, only addressed "draining or reversing the direction of" the water of a river, stream, pond or aquifer from its natural course or state to the injury or prejudice of others. The bill was referred to the Committee on Natural Resources, which issued a divided report referring the bill to the Judiciary Committee. As a result, the bill was carried over to the Second Regular Session. *See* Vol. 1, Leg. Record, 1st Reg. Sess. 122nd Legis. at H-353-54 (April 5, 2005).

7

In the Judiciary Committee the bill was replaced by Committee Amendment "A" (Filing No. S-542) titled. "An Act to Replace the Common Enemy Rule with Regard to Changing the Flow of Surface Water." The amendment created 17 M.R.S. § 2808, quoted above. The "Summary" accompanying the amended bill stated, in part:

> This amendment is intended to change the principle of legal liability in this State concerning altering the flow of surface water that results in injury to another person's land or injury to the use of another person's land. This amendment rejects the common enemy rule reaffirmed in *Johnson v. Whitten*, 384 A.2d 698 (Me. 1978) and adopts the reasonable use rule as stated in *Micucci v. White Mountain Trust Company*, 114 N.H. 436, 321 A.2d 573 (1974).

The sponsor of the bill, as originally drafted and as later amended, was Senator Andrews of York, who spoke on the floor of the Senate on April 3, 2006 and explained how the bill came to be and what it was designed to do. The bill was apparently inspired by the situation encountered by a summer resident of York, whose neighbor "built a year-round house next door to her and added something like 10 to 12 yards of fill. In the process of adding this fill, it caused all the surface water to come down onto her property and literally cover her septic tank." As recounted by Senator Andrews, the woman sought legal advice but "was told by her lawyer that she had no protection and no standing in court for this kind of damage." She added:

> We now have a unanimous committee report. What it does is replaces the Common Enemy Rule, which state [sic] had operated under for over 200 years, with the Reasonable Use Rule for Flow of Water, which 47 other states have adopted. This is one woman and this legislature working three years to change a 200-year-old standing law in the State of Maine. This means that in the future if someone feels that they have been aggrieved by

this sort of thing, they can at least go to court and attempt to recoup their damages.

*Senate Legislative Record,* April 3, 2006 at S-1748.

Title 17 M.R.S. § 2808 became effective on January 1, 2007 and applies "to causes of action accruing on or after" that effective date. *See* P.L. 2005, c. 564, §§ 2 & 3. *See also Harris v. Woodlands Club*, 2012 ME 117, ¶ 18, n. 9. Laverdiere contends that the Legislature's enactment of 17 M.R.S. § 2808, and its legislative history, clearly shows that the "common enemy doctrine" pertaining to the flow of surface water has been abolished in Maine for causes of action accruing on or after January 1, 2007. Accordingly, she argues that Counts I and IV of the Second Amended Complaint do not state viable causes of action and she is entitled to summary judgment on those counts. The court agrees.

The Law Court has stated that "the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or by necessary implication." *Valente v. Bd. of Envtl. Pro.,* 461 A.2d 716, 718 (Me. 1983). *See also Batchelder v. Realty Res. Hospitality, LLC.,* 2007 ME 17, ¶ 23, 914 A.2d 1116. The court concludes that the Legislature was clear and explicit it its intent to replace the common enemy doctrine as recognized by the Law Court and replace it with the "reasonable use" rule as enacted in 17 M.R.S. § 2808.

Summary judgment will be granted to Laverdiere on Counts I and IV of the Second Amended Complaint.[3]

---

[3] Even if the common enemy doctrine still applied to this case, the court would still grant summary judgment to Laverdiere on Counts I and IV because there is no genuine issue of

9

B. Statutory Nuisance – 17 M.R.S. § 2808

Laverdiere also maintains that she is entitled to summary judgment on Counts II and V of the Second Amended Complaint because there is no genuine issue of material fact that either her 2015 Boathouse construction (Count II) or her 2016 landscaping project (Count V) constituted an "unreasonable use" of her land that "unreasonably" injured the Walters's land or "unreasonably" interfered with the "reasonable" use of their land. 17 M/R/S. § 2808. The court concludes that summary judgment on Counts II and V is not appropriate because there remain genuine issues of material fact in dispute on the question of the reasonableness of Laverdiere's use of her land and whether such use amounted to an unreasonable injury to or interference with the Walters's property.

The Law Court has not had occasion to apply and interpret the language of 17 M.R.S. § 2808. *See Halliday v. Henry*, 2015 ME 61, 116 A.3d 1270 (action brought pursuant to section 2808 but decided on statute of limitations grounds). Cases from other jurisdictions, however, appear to be in agreement that under the "reasonable use" rule, "[t]he issue of reasonableness is a question of fact to be determined in each case upon the consideration of all relevant circumstances." *Butler v. Bruno*, 341 A.2d at 739. *See also Braham v. Fuller*, 728 P.2d 641, 644 (Alaska, 1986) (applying reasonable use rule where landowner caused permafrost to melt and flood adjacent property – summary judgment not appropriate because reasonableness of conduct was a question of fact); *Weldin Farms*, 414 A.2d at 505 (facts of each case must be examined according to the criteria of the reasonable use standard); *Argyelan*

---

material fact that Laverdiere created any type of artificial collection of water and discharged it upon the Walters's property.

*v. Haviland*, 435 N.E.2d at 989 (Hunter, J., dissenting) (surface water disputes are "extremely fact sensitive").

Here, there are genuine issues of disputed fact as to whether Laverdiere took reasonable precautions to mitigate or avoid the flow of surface water onto the Walters's property before and during the 2015 Boathouse construction or the 2016 landscaping project. Accordingly, Laverdiere's motion for summary judgment will be denied as to Counts II and V of the Second Amended Complaint.

## C. The Spite Fence Law – 17 M.R.S. § 2801

"Any fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance." 17 M.R.S. § 2801.

Laverdiere claims that she is entitled to summary judgment as to Count III because there is no evidence in the record to conclude that the fence she erected was or is a spite fence. She concedes, however, that portions of the fence are higher than 6 feet, but she represents that any portions of the fence exceeding 6 feet will be trimmed, although the court is not aware that this has been done.

It is not necessary that malice and the intent or purpose to annoy be the "sole" motive for building a fence that unnecessarily exceeds 6 feet. Rather, it is enough if malice was the dominant motive, "meaning that without that malicious motive, the fence would not have been erected or maintained." *Tranfield v. Arcuni-English* 2019 ME 135, ¶ 9, 215 A.3d 222. Like the question of reasonableness, the issue of malice is a question of fact. Moreover, given the relationship between Laverdiere and the Walters, and the history of their dispute and the inferences one can draw from the ongoing

11

nature of that dispute, the court concludes that resolution of this claim by way of summary judgment is not appropriate, as there remain genuine issues of material fact to be resolved by the factfinder. Laverdiere's motion for summary judgment on Count III of the Second Amended Complaint will be denied.

## CONCLUSION

The entry is:

Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. Summary Judgment is GRANTED in favor of Defendant Laverdiere as to Counts I and IV of the Second Amended Complaint. Laverdiere's motion for summary judgment is DENIED as to Counts II, III and V of the Second Amended Complaint.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE: November 22, 2021

William R. Stokes
Justice, Superior Court

Entered on the docket 11|23|2021

12

SUPERIOR COURT
KENNEBEC, ss.
Docket No    AUGSC-RE-2016-00004

MATTHEW WALTERS (TRUSTEE) - PLAINTIFF
PO BOX 55
MANCHESTER ME 04351

**DOCKET RECORD**

Attorney for: MATTHEW WALTERS (TRUSTEE)
EDMOND BEAROR - WITHDRAWN 12/21/2016
RUDMAN & WINCHELL
PO BOX 1401
84 HARLOW STREET
BANGOR ME 04402-1401

Attorney for: MATTHEW WALTERS (TRUSTEE)
ALLISON A ECONOMY - WITHDRAWN 12/21/2016
RUDMAN & WINCHELL
PO BOX 1401
84 HARLOW STREET
BANGOR ME 04402-1401

Attorney for: MATTHEW WALTERS (TRUSTEE)
JOSHUA RANDLETT - WITHDRAWN 12/21/2016
RUDMAN & WINCHELL
PO BOX 1401
84 HARLOW STREET
BANGOR ME 04402-1401

Attorney for: MATTHEW WALTERS (TRUSTEE)
TIMOTHY BRYANT - RETAINED 12/09/2016
PRETI FLAHERTY BELIVEAU PACHIOS LLP
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

JENNIFER WALTERS (TRUSTEE) - PLAINTIFF
PO BOX 55
MANCHESTER ME 04351

Attorney for: JENNIFER WALTERS (TRUSTEE)
ALLISON A ECONOMY - WITHDRAWN 12/21/2016
RUDMAN & WINCHELL
PO BOX 1401
84 HARLOW STREET
BANGOR ME 04402-1401

Attorney for: JENNIFER WALTERS (TRUSTEE)
TIMOTHY BRYANT - RETAINED 12/09/2016
PRETI FLAHERTY BELIVEAU PACHIOS LLP
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

vs

BRENDA R LAVERDIERE - DEFENDANT
408 WEST ELM STREET
YARMOUTH ME 04096

RE-200                          Page   1      of   22                          Printed on:  11/23/2021

Attorney for: BRENDA R LAVERDIERE
THOMAS BRENDAN FEDERLE - WITHDRAWN 01/15/2017
FEDERLE LAW LLC
254 COMMERCIAL ST STE F

PORTLAND ME 04101

Attorney for: BRENDA R LAVERDIERE
JOHN R VEILLEUX - RETAINED
NORMAN HANSON & DETROY LLC
PO BOX 4600
TWO CANAL PLAZA
PORTLAND ME 04112-4600

Attorney for: BRENDA R LAVERDIERE
DAVID GOLDMAN - RETAINED
NORMAN HANSON & DETROY LLC
PO BOX 4600
TWO CANAL PLAZA
PORTLAND ME 04112-4600

| | |
|---|---|
| Filing Document: COMPLAINT | Minor Case Type: NUISANCE |
| Filing Date: 01/15/2016 | |

Docket Events:

01/21/2016  FILING DOCUMENT - COMPLAINT FILED   ON 01/15/2016

01/21/2016  Party(s):  MATTHEW WALTERS
                       (TRUSTEE)
           ATTORNEY - RETAINED ENTERED   ON 01/15/2016

           Plaintiff's Attorney: EDMOND BEAROR

01/21/2016  Party(s):  MATTHEW WALTERS
                       (TRUSTEE)
           MOTION - MOTION PRELIMINARY INJUNCTION FILED   ON 01/15/2016
           Plaintiff's Attorney:  EDMOND BEAROR
           WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

01/21/2016  Party(s):  MATTHEW WALTERS
                       (TRUSTEE)
           OTHER FILING - REQUEST FOR HEARING FILED   ON 01/15/2016

02/03/2016  Party(s):  BRENDA R LAVERDIERE
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED   ON 01/20/2016
           IN HAND